UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| NANCY BESS,<br><br>            Plaintiff,<br><br>    v.<br><br>OCWEN LOAN SERVICING LLC,<br><br>            Defendant. | CASE NO. C15-5020 BHS<br><br>ORDER DENYING PLAINTIFF'S MOTION FOR CLASS CERTIFICATION AND DENYING DEFENDANT'S MOTION TO EXCLUDE EXPERT TESTIMONY |

This matter comes before the Court on Plaintiff Nancy Bess's ("Bess") motion for class certification, Dkt. 65, and Defendant Ocwen's Loan Servicing, LLC's ("Ocwen") motion to exclude expert testimony, Dkt. 106. The Court has considered the pleadings filed in support of and in opposition to the motions and the remainder of the file and hereby denies the motion for class certification and denies the motion to exclude expert testimony for the reasons stated herein.

## I. PROCEDURAL HISTORY

On November 10, 2014, Bess filed a class action complaint against Ocwen in the Kitsap County Superior Court for the State of Washington. Dkt. 1, Ex. A. On January 12,

2015, Ocwen removed the case to this Court. Dkt. 1. On January 13, 2015, Ocwen filed a motion to dismiss. Dkt. 6.

On March 16, 2015, the Court granted the motion to dismiss with leave to amend. Dkt. 22. On March 27, 2015, Bess filed her first amended complaint. Dkt. 23. Bess alleged the following claims against Ocwen: (1) common law trespass; (2) statutory trespass; (3) violation of RCW 7.28.230; (4) violation of the Deed of Trust Act; (5) violations of the Consumer Protection Act ("CPA"); (6) breach of contract; and (7) unjust enrichment. *Id.* ¶¶ 5.1–13.11. On April 9, 2015, Ocwen filed a second motion to dismiss. Dkt. 24. On June 1, 2015, the Court granted the motion to dismiss with leave to amend. Dkt. 31. On June 9, 2015, Bess filed a notice of intent not to amend. Dkt. 32. On June 18, 2015, the Court dismissed Bess's claims with prejudice. Dkt. 34. On July 6, 2015, Bess filed a notice of appeal. Dkt. 35. On March 9, 2018, the Ninth Circuit issued its memorandum disposition affirming in part, reversing in part, and remanding, Dkt. 39, and on April 2, 2018, the Ninth Circuit entered its mandate, Dkt. 42.

The Ninth Circuit reviewed in light of the Washington Supreme Court's July 7, 2016 decision in *Jordan v. Nationstar Mortgage, LLC*, 185 Wn. 2d 876 (2016) ("*Jordan*"). Dkt. 39.[1] In *Jordan*, the Washington Supreme Court evaluated deed of trust

---

[1] In the instant order, the Court refers to the Washington Supreme Court's decision in *Jordan v. Nationstar Mortgage, LLC*, 185 Wn. 2d 876 (2016) answering two certified questions from the U.S. District Court for the Eastern District of Washington as "*Jordan*" and refers to two later orders issued by the Eastern District in the same case, *Jordan v. Nationstar Mortgage, LLC*, No. 2:14-CV-0175-TOR, 2017 WL 5616362 (E.D. Wash. Nov. 21, 2017) (granting in part plaintiff's motion for partial summary judgment) and *Zamora Jordan v. Nationstar Mortgage, LLC*, No. 2:14-CV-0175-TOR, 2019 WL 1966112 (E.D. Wash. May 2, 2019) (granting final

provisions which authorize a lender to enter the borrower's property after default and prior to foreclosure, concluding that they permit the lender to take possession of the property prior to foreclosure in conflict with state law. *Jordan*, 185 Wn.2d at 883. The Washington Supreme Court explained:

> By changing the locks [the loan servicer] took possession of the property. Since these actions are authorized by the entry provisions, the entry provisions allow the lender to take possession of the property. Because Washington law prohibits lenders from taking possession of the borrower's property before foreclosure, the provisions are in conflict with state law.

*Id*. at 889.

In light of *Jordan*, the parties conceded that Ocwen's defense that its entry onto Bess's property was privileged based on entry provisions in the deed of trust is no longer valid, rendering Bess's common law trespass claim well-pleaded. Dkt. 39 at 2. The Ninth Circuit found that in light of *Jordan*, Bess's claim for statutory trespass under RCW 4.24.630 was also well-pleaded, explaining that Bess's allegations "are sufficient to show a reasonably foreseeable invasion of Bess's property, which would affect Bess's exclusive possession and interest in the property." *Id*. at 2–3 (citing *Grundy v. Brack Family Tr.*, 151 Wn. App. 557, 566 (2009)). The Circuit explained it was "plausible that Ocwen was aware its conduct was unlawful . . . ." *Id*. at 4 (citation omitted). The Circuit also concluded Ocwen's alleged conduct "could constitute unfair or deceptive acts" in violation of Washington's CPA. *Id*. The Circuit affirmed the dismissal of Bess's remaining claims and affirmed that Bess lacked standing to bring claims on behalf of her

---

approval of class action settlement) as "the *Jordan* summary judgment order" and "the *Jordan* settlement order," respectively.

late husband's estate. *Id*. at 5–6. On April 16, 2019, Ocwen answered Bess's amended complaint. Dkt. 43.

On May 8, 2018, the Court entered an order setting a schedule for class certification briefing. Dkt. 49. On January 17, 2019, Ocwen filed a motion to stay the matter pending resolution of the appeal in *Bund v. Safeguard Properties, LLC*, No. C16-920 MJP, 2018 WL 5112642 (W.D. Wash. Oct. 19, 2018), *appeal filed sub nom James v. Safeguard Properties, LLC*, No. 18-35953 (9th Cir.). Dkt. 59.

On March 15, 2019, Bess filed a motion to certify a class with the following membership:

> All persons who own or owned real property in Washington subject to a deed of trust or mortgage serviced or held by Ocwen whose property Ocwen or its agents Altisource or CoreLogic entered prior to the completion of a foreclosure sale and changed one or more lock between November 10, 2010 and July 7, 2016.

Dkt. 65 at 14–15. On June 7, 2019, Ocwen responded to the motion for class certification. Dkt. 86. On June 28, 2019, the Court denied Ocwen's motion to stay. Dkt. 98. On July 26, 2019, Bess replied to her motion for class certification. Dkt. 100.

On July 31, Ocwen surreplied seeking to strike all testimony from Bess's expert Dr. John A. Kilpatrick ("Kilpatrick"), which Bess submitted in support of her motion for certification. Dkt. 105. On August 9, 2019, Ocwen filed a motion to exclude Kilpatrick's testimony from the class certification record. Dkt. 106. On August 26, 2019, Bess responded. Dkt. 108. On August 29, 2019, Ocwen replied. Dkt. 110.

On November 21, 2019, Ocwen filed a notice of supplemental authority. Dkt. 111.

## II. FACTUAL BACKGROUND

In 2000, Gary Bess purchased a single-family residence in Port Orchard, Washington ("Bess residence"). Dkt. 23, ⁋ 4.1. In 2007, Gary Bess married Nancy Bess. *Id*. ⁋ 4.2. Gary Bess and Nancy Bess resided at the Bess residence. *Id*.

In November 2007, Gary Bess obtained a mortgage loan from GMAC Mortgage, LLC. *Id.* ¶ 4.3. The loan was secured by a Deed of Trust on the Bess residence. *Id.* ¶ 4.4. Although Gary Bess is identified as the sole borrower on the Deed of Trust, both Gary Bess and Nancy Bess executed the Deed of Trust. Dkt. 7, Declaration of Joanne Hepburn, Ex. 1 at 2, 15.[2]

The Deed of Trust obligates the borrower to "pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note." *Id.* at 5. If the borrower fails to comply with the Deed of Trust's provisions, the lender or its successors and assigns may take certain actions to secure the property. *Id.* at 9. The Deed of Trust provides in relevant part as follows:

> If (a) Borrower fails to perform the covenants and agreements contained in [the Deed of Trust] . . . then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under [the Deed of Trust], including protecting and/or assessing the value of the Property and securing and/or repairing the Property. . . . Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off.

*Id.*

---

[2] Unless otherwise noted, the Court refers to ECF page numbers throughout.

On May 27, 2012, Gary Bess died intestate. Dkt. 23, ¶ 4.9. Nancy Bess declared that when her husband died, she became the sole owner of the Bess residence. Dkt. 70, ¶ 2. She declared that a few months later, she purchased a small cabin, staying in the cabin occasionally and the Bess residence regularly. *Id*. The loan obligations for the Bess residence became delinquent following Gary Bess's death. Dkt. 23, ¶ 4.10.

Bess declared that on October 29, 2013, Ocwen's vendor CoreLogic changed the locks on the Bess residence. Dkt. 70, ¶ 3. In deposition, Bess testified that she changed the locks back within eight days and her locks remained on the property from early November 2013 until February or March 2014 when they were changed again. Dkt. 90-1 at 85–87. Bess declares that she believes Ocwen charged her inspection and property preservation fees each time it entered her home. Dkt. 70, ¶ 4. Bess declares that Ocwen initiated non-judicial foreclosure proceedings on March 7, 2014 and foreclosure was completed on July 29, 2014. *Id.* ¶ 5.

### III. DISCUSSION

**A.  Standard for Certification**

"Class certification is governed by Federal Rule of Civil Procedure 23." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011). "As the party seeking class certification, [Plaintiff] bears the burden of demonstrating that [she] has met each of the four requirements of Rule 23(a) and at least one of the requirements of Rule 23(b)." *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001), *amended by* 273 F.3d 1266 (9th Cir. 2001). The four requirements of Rule 23(a) are: (1) numerosity; (2)

commonality; (3) typicality; and (4) adequacy of representation. *Parsons v. Ryan*, 754 F.3d 657, 674 (9th Cir. 2014).

"Rule 23 does not set forth a mere pleading standard." *Dukes*, 564 U.S. at 350. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Id.* Before certifying a class, the Court must conduct a "rigorous analysis" to determine whether Bess has met the requirements of Rule 23. *Zinser*, 253 F.3d at 1186.

Here, Bess seeks certification under Rule 23(b)(3). Dkt. 65 at 8. A class action may be maintained under Rule 23(b)(3) if "questions of law or fact common to class members predominate over any questions affecting only individual members," and if "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**B.     Merits of Certification**

"Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013) (citing *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). This "inquiry focuses on the relationship between the common and individual issues and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 944 (9th Cir. 2009) (internal quotation marks omitted). Ocwen focuses the bulk of its opposition to class certification on questions of predominance and moves to strike Bess's expert based in part on issues which bear on

predominance. The Court finds predominance dispositive and thus begins and ends its analysis there.

It is possible for common issues to predominate "'even though other important matters will have to be tried separately, such as damages or some affirmative defenses peculiar to some individual class members.'" *Tyson Foods, Inc. v. Bouaphkeo*, 136 S. Ct. 1036, 1045 (2016) (quoting 7AA C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 1778 (3d ed. 2005)). "[T]he need for individualized findings as to the amount of damages does not defeat class certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1154 (9th Cir. 2016) (citations omitted).

Without a valid common method of calculating damages, individual issues may predominate over common issues. In *Nguyen v. Nissan N. Am., Inc.*, 932 F.3d 811, 817 (9th Cir. 2019), the Circuit explained that damages may be individualized "as long as a valid method has been proposed for calculating those damages." *Id.* (quoting *Lambert v. Nutraceutical Corp.*, 879 F.3d 1170, 1182 (9th Cir. 2017), *rev'd on other grounds*, 139 S. Ct. 710 (2019)); *accord Doyle v. Chrysler Grp., LLC*, 663 F. App'x 576, 579 (9th Cir. 2016) (need for individualized damages findings does not defeat class certification when common method exists). Similarly, in *Ward. v. Apple, Inc.*, No. 18-16016, 2019 WL 5957405, at *1 (9th Cir. 2019), the Circuit looked unfavorably on an expert's promise to offer a common method following class certification, finding the district court appropriately denied certification when the plaintiffs' expert declared he expected to be able to estimate damages using standard economic techniques but did not actually put forward a method for the court to evaluate.

Bess's claims are that Ocwen changed locks on putative class members' homes pursuant to a uniform policy and prior to foreclosure and charged fees for the lock changes it performed, constituting trespass under Washington common law, trespass under RCW 4.24.630, and violation of the CPA. Dkt. 65 at 16. Bess argues putative class members were injured by these actions in the form of (1) damage to their property through the physical lock change and (2) loss of exclusive possession when lock changes excluded them from their homes, while (3) Ocwen was unjustly enriched through the fees it charged for the lock changes. *Id.* at 25–27. Regarding damage to property caused by the lock change, Bess argues the fee Ocwen charged for lock changes is the appropriate measure of damages because it reasonably approximates the cost of remediating damage to class members' doors caused by drilling out and replacing their original locks. *Id*. Regarding loss of exclusive possession, Bess argues reasonable rental value for the home is the appropriate measure of damages. *Id.* Regarding trespass resulting in ill-gotten profits, Bess argues disgorgement of Ocwen's profits from lock changes appropriately measures damages. *Id*.

Bess seeks reasonable rental value of the property as damages for loss of exclusive possession from the date of the lock change until the date the loan was brought current or the home was sold. Dkt. 65 at 27. In a parallel case, *Britton v. ServiceLink Field Servs.*, Case No. 2:18-CV-0041-TOR, 2019 WL 3400683, at *6 (E.D. Wash. July 26, 2019) ("*Britton*"), the district court concluded that without a viable common methodology to calculate the rental value of each property, individual inquiries would predominate over the proposed class's common questions. The Court finds the same is true in this case.

Bess argues that rental damages can be proven through common evidence—Ocwen's records and the damages calculation method Kilpatrick proposes. Dkt. 65 at 27. Bess submitted an affidavit from Kilpatrick, Dkt. 71, in support of her motion for class certification, Dkt. 65 and a declaration from Kilpatrick, Dkt. 102, in support of her reply, Dkt. 100. Bess argues Kilpatrick's submissions demonstrate a common methodology to calculate the reasonable rental value of a home while the owner was deprived of possession. Kilpatrick's affidavit explains that his common methodology uses the "Greenfield" automated valuation model ("AVM") and rent-to-price ratios calculated by using the Northwest Multiple Listing Service to gather rental market transactions, uses the AVM to value the rental observations, and calculates a rent-to-price ratio for a subject property by "dividing the known rental price (annualized) by the estimated home value at that time," resulting in a median rent-to-price ratio for each county for each year. Dkt. 71, ¶¶ 15, 33, 64–66. For counties with insufficient market transaction data, Kilpatrick used summary information on rental values from the U.S. Census Bureau and the U.S. Department of Housing and Urban Development. *Id.* ¶¶ 67–71. Kilpatrick determined that Bess was locked out of her home for 267 days which resulted in a rental value based on his methodology of $10,544.99. *Id*. ¶¶ 75, 79.

Ocwen's motion to exclude expert testimony asks the Court to exclude Kilpatrick's affidavit, his declaration and all portions of Bess's briefing that rely on Kilpatrick's testimony. Dkt. 106 at 5. Expert testimony is only admissible if it satisfies several criteria, including the requirement that it "is the product of reliable principles and methods." Fed. R. Evid. 702(c). "Thus, before admitting expert testimony, courts must

make a 'preliminary assessment' of (1) whether the expert is qualified to present the opinion offered, (2) 'whether the reasoning or methodology underlying the testimony is . . . valid,' and (3) 'whether that reasoning or methodology properly can be applied to the facts in issue.'" *Lewert v. Boiron, Inc.*, 212 F. Supp. 3d 917, 924 (C.D. Cal. 2016) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 597 (1993) ("*Daubert*")). The Ninth Circuit has held that while a district court should evaluate the admissibility of expert testimony at class certification under *Daubert*, "admissibility must not be dispositive." *Sali v. Corona Reg'l Med. Ctr.*, 909 F.3d 996, 1006 (9th Cir. 2018). "Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." *Id*.

Kilpatrick's methodology has been present in two similar cases before the U.S. District Court for the Eastern District of Washington, *Jordan v. Nationstar Mortgage, LLC*, Case No. 214-CV-0175-TOR and *Britton*. In support of its motion to exclude, Ocwen provides a redline comparison of Kilpatrick's affidavit in support of certification in the case at bar with Kilpatrick's affidavit in *Britton*. Dkt. 107, ¶ 4; Dkt. 107-2. The comparison shows the affidavits are substantially identical, varying only in a few case-specific names and details and in the market analysis of the county where the named plaintiffs' properties were located. Dkt. 107-2.

In the *Jordan* summary judgment order, the district court held that class members were entitled to the reasonable rental value from the date the house was locked until the cure of any default or when the property was properly liquidated, matching Bess's proposal to end the lockout period when the loan was brought current or the home sold.

*Jordan* summary judgment order, 2017 WL 5616362, at *6; Dkt. 65 at 27. At summary judgment, the plaintiff presented an expert report calculating reasonable rental damages but admitted that the accuracy of the calculations was a factual issue for trial. *Jordan* summary judgment order, 2017 WL 5616362, at *6. The court held that the servicer "may supply evidence at trial as to those Class members who continued to occupy their homes after rekeying and their damages may be reduced accordingly" but reserved the issue for trial. *Id*. However, the case settled instead of proceeding to trial. *Jordan* settlement order, 2019 WL 1966112. In evaluating whether the settlement agreement was adequate, the district court noted the defendants' claim that they were prepared to show at trial that "Plaintiff's expert's methodology for calculating damages was fundamentally flawed and Class Members w[ould] only be entitled to a fraction of the damages Plaintiff claimed for them." *Id*. at *3.

In *Britton*, the district court denied certification based in part on predominance issues arising from the inadequacy of Kilpatrick's damages methodology. 2019 WL 3400683, at *4. The court noted that while Kilpatrick's opinions were part of the record before it in *Jordan*, they were not challenged at certification. *Id*. at *7 n.4 (citing the *Jordan v. Nationstar Mortgage, LLC* case generally). Ocwen argues that the Court should follow the court in *Britton* and exclude Kilpatrick's testimony from the class certification record. Dkt. 106 at 10. The Court agrees with Ocwen that many of the problems with Kilpatrick's proposed methodology identified in *Britton* are equally present in this case.

For example, the district court concluded that it could not decide whether Kilpatrick's model was reliable without an explanation of the method he used to select

variables for the AVM, why he selected the variables he did for the named plaintiffs' properties, or what variables were in fact used for the named plaintiffs' properties. *Britton*, 2019 WL 3400683 at *7. The cited portions of Kilpatrick's affidavit in *Britton* match Kilpatrick's affidavit in the case at bar. *See* Dkt. 107-2, ¶¶ 47–48. Moreover, the Court finds that Kilpatrick's explanation, present in both cases, that "many of the possible property characteristics were not necessary because of the high statistical correlations with the variables [he] had already chosen . . . ," *id.* at ¶ 48, does not clarify whether the variables selected to assess the Bess residence are the same as or different from variables which would be selected to assess other class member properties, so the Court cannot determine whether this aspect of the methodology is common. Kilpatrick also explains that he can tailor the AVM "to accommodate different property types (e.g. single-family residences, condominiums, townhouses, and commercial properties)," *id.* ¶ 49, but did not present an evaluation of a home of a different type from the Bess residence despite apparently having access to 422 sample files for putative class member properties, Dkt. 93, ¶¶ 7–9, Second Declaration of Gina Feezer ("Feezer"), Senior Loan Analyst at Ocwen Financial Corporation.

Next, the district court concluded that Kilpatrick's methodology failed to account for the actual condition of each home. *Id*. at *8. The district court concluded this failure would result in a windfall to some plaintiffs whose homes were uninhabitable and would violate the defendant's Seventh Amendment right to a jury trial and due process. *Id.* The Court finds the same concerns in the case at bar. Though Kilpatrick declares that many of Ocwen's arguments on home condition improperly focus on the condition of the

properties after Ocwen changed locks and thus arguably became responsible for the property's condition, Dkt. 102, ¶ 7, Feezer's declaration is to the contrary. Feezer's declaration describes 100 sample loan files for putative class members which Ocwen reviewed in support of its opposition to the motion for class certification. Dkt. 93. Her declaration shows several of the 100 sample loan files reviewed showed evidence of substantially poor condition prior to a lock change, including a home with "significant mold issues, a damaged roof, extensive water damage, and other problems requiring repair and remediation," a home with "significant interior and exterior debris, several broken windows, conditions in need of repair," a home which was inaccessible due to "overgrowth, cats, possible rodents," a home where the City of Kent reported several broken window, tall grass and weeds, and several instances of trespassing, and a home where the Tacoma-Pierce County Health Department issued a violation notice with an observation that "the property is vacant with dumping and destruction due to vandalism." Dkt. 93, ¶¶ 68, 73(g), 80(b), 83, 88.

Bess argues the Court should not follow *Britton*'s conclusion that problems in calculating reasonable rental damages means individual issues will predominate. The Court finds Bess's arguments unpersuasive. First, Bess argues that only one of her three theories of damages relies on Kilpatrick's methodology and the other two theories do not present predominance issues. Dkt. 108 at 8. Bess provides no authority for the proposition that the Court may ignore a serious predominance issue that arises in a primary theory of recovery available to the class under the proposed class definition. It is up to the plaintiff to present a certifiable class definition—if Bess determines that it is in

ORDER - 14

the best interests of the class to forgo this category of damages, she may propose a class definition which excludes this recovery.

Second, Bess argues that the *Britton* court's analysis of Kilpatrick's methodology was unnecessary because the court also found the proposed class representatives lacked typicality and adequacy. *Id*. at 9–10 (citing *Britton*, 2019 WL 3400683 at *4–5). However, just because the district court in *Britton* did not have to reach predominance to deny certification does not render its thorough analysis of Kilpatrick's methodology incorrect.

Third, relevant to the failure to account for the actual condition of each home, Bess argues that Kilpatrick's opinion is preliminary. Dkt.100 at 21. Bess argues that if the Court finds that additional consideration should be given to property condition, Kilpatrick's methodology can be supplemented to include a review and rating of each class property's condition and "apply an appropriate discount for those in below average condition." *Id.* (citing Dkt. 102, ¶ 9); Dkt. 108 at 11–12. However, the feasibility of such supplementation of the model and whether it is reliable is only hypothetical as Kilpatrick provides no example of such a calculation for the Court to evaluate. *Ward*, 2019 WL 5957405, at *1. The time to present an adequate methodology to calculate damages such that the Court may be assured individual issues will not predominate is at the time of certification, not at an unspecified future date.

Additionally, Ocwen points out that in his sample calculation for Bess, Kilpatrick used a start date two days after the actual lock change and a foreclosure sale date eleven days after the actual foreclosure sale, demonstrating the difficulty of accurately

identifying the period of exclusion even assuming an identifiable foreclosure sale date or date the loan was brought current. Dkt. 86 at 37–38. This highlights one of the predominance problems for this theory of damages that the district court identified in *Britton* even apart from Kilpatrick's methodology, that determining the duration of the period a class member was locked out of their home (data points necessary for any common damages methodology) is fact-intensive and unique to each class member. *Britton*, 2019 WL 3400683, at *6. In response, Bess argues that where property disposal dates are missing or unclear from Ocwen's records, public records searches "will more clearly establish the disposal dates." Dkt. 100 at 21. Bess provides a second declaration from Kilpatrick explaining that Bess's counsel provided the dates Kilpatrick used in the example and that Ocwen's records combined with public data points should provide a sufficient source for this information. *Id.*; Dkt. 102, ¶¶ 3–4. The Court finds Bess has failed to demonstrate this solution would be successful. Despite Kilpatrick's apparent access to 422 sample files, Dkt. 93, ¶¶ 7–9, he did not, for example, determine what percentage of those files featured property disposal dates and what percentage would require resorting to public records searches. Nor did he attempt public records searches for Bess's home or for any of those sample files or present the Court any other information it could evaluate about the reliability of the proposed solution.

Last, relevant to assessing the duration of a lockout, the district court in *Britton* concluded that when a lock changes was performed on a secondary door only and the putative class member was able to re-enter without contacting the servicer, the member was never actually locked out of their home. *Britton*, 2019 WL 3400683, at *8. The

district court also determined damages calculations would need to account for putative class members who gained access to their home prior to foreclosure, such as by recovering the keys from the servicer. *Id*. Bess makes the case that whether damages should be reduced based on a class member's post-lockout conduct or reduced to account for varying degrees of exclusion (such as whether the lock change was to a primary door, included a lockbox, or was only performed on a secondary door) are legal issues common to the class. Bess relies on *Howard v. Edgren*, 62 Wn.2d 884, 886 (1963), where the Washington Supreme Court found that "whether the plaintiff could have procured a tenant and how much she would have received from the property if the defendants had not occupied it" were not relevant to the plaintiff's right to reasonable rental value in damages. Dkt. 108 at 9. Though the Court agrees with the court in *Britton* that if these considerations are relevant they would present serious additional issues in predominance, Bess is correct that a legal conclusion in her favor has at least the potential to moot these issues, so the Court does not rely on this point.

The Court concludes that though Kilpatrick appears to have substantial credentials in his field, Bess fails to persuade the Court that the methodology he proposes is sufficiently reliable as a common methodology such that damages "could feasibly and efficiently be calculated once the common liability questions are adjudicated." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013); *accord Nguyen*, 932 F.3d at 817. Following the Ninth Circuit's instruction that the appropriate consideration at certification is the weight and persuasiveness of evidence, not its admissibility, *Sali*, 909 F.3d at 1006, the Court finds Kilpatrick's methodology has little or no persuasive value

but denies Ocwen's motion to exclude. Dkt. 106. Giving Kilpatrick's proposed methodology little or no weight, the Court finds Bess has failed to show individual issues regarding the rental value of each property would not predominate if the class were certified as proposed. Therefore, the Court denies the motion to certify the class.

## IV. ORDER

Therefore, it is hereby **ORDERED** that Bess's motion for class certification, Dkt. 65, is **DENIED**, and Ocwen's motion to exclude expert testimony, Dkt. 106, is **DENIED.**

Dated this 8th day of January, 2020.

BENJAMIN H. SETTLE
United States District Judge